# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS

**Brinda Sue Swilling**                                                                                   **Plaintiff**

**v.**                       **No. 4:13CV00607 BRW/JTR**

**Carolyn W. Colvin, Acting Commissioner,**
**Social Security Administration**                                       **Defendant**

## Recommended Disposition

### Instructions

The following recommended disposition was prepared for U.S. District Judge Billy Roy Wilson. A party to this dispute may file written objections to this recommendation. An objection must be specific and state the factual and/or legal basis for the objection. An objection to a factual finding must identify the finding and the evidence supporting the objection. Objections must be filed with the clerk of the court no later than 14 days from the date of this recommendation.[1] The objecting party must serve the opposing party with a copy of an objection. Failing to object within 14 days waives the right to appeal questions of fact.[2] If no objections are filed, Judge Wilson may adopt the recommended disposition without independently reviewing all of the record evidence.

---

[1]28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2]*Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections waives right to de novo review and to appeal magistrate judge's findings of fact).

**Reasoning for Recommended Disposition**

Brinda Sue Swilling seeks judicial review of the denial of her application for disability income benefits.[3] Swilling has other medical issues, but her application flowed from vision loss.[4] Swilling maintains she has been disabled since December 10, 2010, when she underwent right eye surgery for a detached retina.

**The Commissioner's decision**. After considering the application, the Commissioner's ALJ determined Swilling has severe impairments — detached retina in the right eye, cataract in the left eye, diabetes mellitus, and obesity[5] — but she can do some medium work, to include her past work as a home health care attendant.[6] Because a person who can do her past work isn't disabled under social security law,[7] the ALJ denied the application.

After the Appeals Council declined to review,[8] the ALJ's decision became the

---

[3] SSA record at p. 103 (alleging disability beginning Dec. 10, 2010).

[4] *Id.* at p. 149 (basing on poor vision in left eye and blindness in right eye).

[5] *Id.* at p. 11.

[6] *Id.* at pp. 12-16.

[7] 20 C.F.R. § 416.920(a)(4) .

[8] SSA record at p. 1.

Commissioner's final decision for the purpose of judicial review.[9] Swilling filed this case to challenge the decision.[10] In reviewing the decision, the court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[11] This recommendation explains why substantial evidence supports the decision and why the ALJ made no legal error.

**Swilling's allegations**. Swilling challenges most aspects of the ALJ's decision: record development, credibility evaluation, weight given to her doctor's opinion, consideration of the evidence, and determination about the ability to work. She maintains the ALJ should have ordered a consultative physical exam, and fully credited her testimony about eye pain and vision problems. She contends the ALJ failed to consider the effect lupus, COPD, asthma, and depression on her ability to work. For these reasons, she says substantial evidence does not support the ALJ's

---

[9]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[10]Docket entry # 1.

[11]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

decision.[12]

**Applicable legal principles**. For substantial evidence to support the decision, a reasonable mind must accept the evidence as adequate to show Swilling can do some medium work, to include her past work as a home health care attendant.[13] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."[14] The ALJ placed the following limitations on medium work: occasional near vision, occasional far vision, occasional peripheral vision on the right, and occasional depth perception.[15] The court must determine whether Swilling can work within these limitations.

**Whether substantial evidence exists**. The ALJ's determination about Swilling's ability to work must be supported by medical evidence; Swilling's subjective allegations are not enough to prove she is disabled.[16] When asked about why she can't work, Swilling explained that she feels like she's depressed; she doesn't

---

[12] Docket entry # 16.

[13] *See Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990) ("Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (internal citation omitted).

[14] 20 C.F.R. § 404.1567(c).

[15] SSA record at p. 12.

[16] 42 U.S.C. § 423 (d)(5(A); *Flynn v. Astrue*, 513 F.3d 788, 792 (8th. Cir. 2008); *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003); 20 C.F.R. § 404.1508.

feel like she's able to get out and do what she used to do.[17] She identified pain, eyesight, and numbness, stinging and burning in her legs as issues preventing her from working.[18]

Medical evidence shows Swilling receives treatment for high cholesterol, high blood pressure, asthma, and diabetes, but those conditions do not prevent Swilling from working.[19] She had those conditions when she worked as home health care attendant. Treatment controls those conditions. "If an impairment can be controlled by treatment or medication, it cannot be considered disabling."[20] Vision problems drive Swilling's claim.

Right eye. Swilling's claim flowed from a detached retina. Retinal detachment is a medical emergency. It occurs when a critical layer of the eyeball — the retina — separates from the tissue around it.[21] When that occurs, the retina cannot work properly. A person will lose her vision permanently unless the detached retina is

---

[17]SSA record at p. 39.

[18]*Id.*

[19]*Id.* at pp. 303-56.

[20]*Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) (citation omitted).

[21]J. Ricker Polsdorfer, 5 The Gale Encyclopedia of Med. 3757 (4th ed.).

promptly repaired.[22]

Floaters or flashes of light often signals a detached retina.[23]  That's what happened in Swilling's case.  While working as a home health care attendant, she began to see spots and light flashes in the right eye.[24]  She sought medical treatment from an optometrist.  The following day, she underwent eye surgery.

The eye surgeon performed a scleral buckle,[25] a procedure for repairing a retinal detachment without entering the eyeball.[26]  Thirty days later, the surgeon performed a second surgery:[27] a vitrectomy, a procedure where the surgeon inserts tiny instruments into the eye to suck out the gel inside the eyeball and replaces the gel with saline.[28]  Forty days latter, the retina detached again;[29] the surgeon performed another

---

[22]*Id*. (" If a detachment is not repaired within 24-72 hours, permanent damage may occur.").

[23]*Id*. at p. 3758 ("It is often associated with floaters — little dark spots that float across the eye and can be mistaken for flies in the room. There may also be flashes of light.").

[24]SSA record at p. 243.

[25]*Id*. at p. 274 (operative report).

[26]J. Ricker Polsdorfer, 5 The Gale Encyclopedia of Med. 3758 (4th ed.) (explaining that the procedure requires making a scar on the surface of the eye and then bringing the retina close to the scarred area).

[27]SSA record at p. 234 (operative report).

[28]J. Ricker Polsdorfer, 6 The Gale Encyclopedia of Med. 4608 (4th ed.) ("Vitrectomy is the surgical removal of the vitreous (transparent gel that fills the eye

a vitrectomy.[30] This time, the surgeon removed the lens of the right eye because of a "significant posterior subcapsular cataract."[31]

Vision in the right eye slowly improved — Swilling counted fingers at 12 inches in May 2011[32] — but a macular hole prevented reading.[33] Her surgeon recommended an intraocular lens to further improve Swilling's vision and help with mobility,[34] but the record doesn't indicate whether she has an intraocular lens. In June 2011, she counted fingers at six inches.[35]

<u>Left eye</u>. Swilling also has problems with the left eye. In April 2011, she suffered Herpes simplex keratitis, an inflammation of the cornea flowing from the

---

from the iris to the retina).").

[29]SSA record at p. 270.

[30]<i>Id</i>. at p. 232.

[31]<i>Id</i>. at p. 270.

[32]<i>Id</i>. at p. 256.

[33]<i>Id</i>. at p. 249 (per eye surgeon, she has a flat macular hole centrally; it "will certainly limit how much vision improvement she eventually ends up with in terms of her central vision. I think she will have some useful ambulatory vision, but she will certainly not have reading vision.") & p. 272 (macular hole in right eye will limit final visual acuity; it's going to keep her from having reading vision).

[34]<i>Id</i>.

[35]<i>Id</i>. at p. 284.

herpes simplex virus.[36] Herpes simplex keratitis can lead to chronic inflammation of the cornea, development of tiny blood vessels in the eye, scarring, loss of vision, and glaucoma.[37] Swilling's keratitis resolved with treatment, but left scarring in the cornea.[38] Swilling also has a cataract.[39] Swilling testified that her doctor deferred cataract surgery due to vision loss in the right eye and to avoid complications with infection.[40] Despite the scarring and the cataract, Swilling has 20/50 vision in the left eye;[41] that is, she can see something 20 feet away that a person with normal vision can see clearly from 50 feet.

Medical opinion evidence. Swilling's primary care physician (PCP) completed a medical source statement that essentially says Swilling is completely disabled,[42] but after reviewing treatment records and the consultative eye exam, two medical experts determined that Swilling can do medium work requiring limited near and far vision.[43]

---

[36]*Id*. at p. 244.

[37]Maureen Haggerty, 3The Gale Encyclopedia of Med. 2465(4th ed.).

[38]SSA record at pp. 248 & 284.

[39]*Id*. at p. 284.

[40]*Id*. at p. 30.

[41]*Id*. at p. 284.

[42]*Id*. at p. 358.

[43]*Id*. at pp. 287-94 & 301.

A third medical expert — an ophthalmologist — characterized Swilling's vision impairment as moderate, with slight reduction in fine discrimination.[44] According to the third expert, Swilling can work with or handle large objects; she can avoid obstacles and hazards such as boxes and wires on the floor. The third expert agreed that Swilling can do work involving limited near and far vision.

The third expert opinion is particularly probative of Swilling's claim because an ophthalmologist specializes in complete eye care services.[45] Although the PCP treated Swilling for many years, there are at least three reasons the third expert's opinion was entitled to more weight than the PCP's opinion: (1) The PCP's treatment records do not support the reported limitations; the limitations reflect Swilling's subjective allegations. The lack of medical findings undermines the credibility of the allegations.[46] (2) The PCP's medical source statement was based, in substantial part, on the loss of vision in the right eye and the cataract in the left eye, but the PCP does

---

[44]*Id.* at p. 299.

[45]*Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998) ("The Commissioner is encouraged to give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." ).

[46]*Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001) ("The ALJ may discount complaints of pain if they are inconsistent with the evidence as a whole."); *Partee v. Astrue*, 638 F.3d 860, 865 (8th Cir. 2011) ("The ALJ may discredit a claimant based on inconsistencies in the evidence.").

not specialize in eye care. A treating physician's opinion is important in determining a person's ability to work, but specialists' opinions are generally afforded more weight.[47] (3) During the relevant time period, the PCP examined Swilling twice for management of chronic conditions;[48] this frequency does not implicate disabling symptoms. The chronic conditions never prevented Swilling from working

Swilling argues that the ALJ should have ordered a consultative physical exam, but the PCP's treatment records presented a longitudinal picture of Swilling's health. The treatment records provided sufficient medical evidence to determine whether Swilling is disabled.[49] To the extent the record required development, the ALJ ordered a consultative exam for the matter at issue — vision. As a result, the ALJ fairly and fully developed the record.[50]

A reasonable mind would accept the evidence as adequate to support the ALJ's decision because: (1) The medical evidence shows vision is Swilling's most significant impairment — treatment controls her other impairments. (2) Swilling stopped working because of her eye surgery and vision loss, not because of other

---

[47] *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000); *Qualls v. Apfel*, 158 F.3d 425, 428 (8th Cir. 1998); 20 C.F.R. § 404.1527(c)(5).

[48] SSA record at pp. 303-04.

[49] *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994).

[50] *Landess v. Weinberger*, 490 F.2d 1187, 1189 (8th Cir. 1974).

impairments. (3) According to the third expert, Swilling can do work that involves limited near and far vision. (4) The ALJ included additional visual limitations; the ALJ's determination was based on more impairment than that reported by three medical experts.

**Vocational evidence**. In the past, Swilling worked as a sewing machine operator and a home health care attendant.[51] Vision impairment prevents working as a sewing machine operator, but according to a vocational expert, work as a home health care attendant requires occasional near vision, occasional far vision, occasional peripheral vision on right, and occasional depth perception.[52] A reasonable mind would accept the vocational evidence as adequate to show Swilling can do her past work as a home health care attendant.

**Conclusion**. The retinal detachment prevented Swilling from working while she recovered from her eye surgeries, because recovery required her to face down.[53] No question exists about vision loss, but the medical evidence does not show vision loss prevented Swilling from doing her past work for 12 continuous months. Only an impairment that lasts, or is expected to last, 12 continuous months is disabling under

---

[51] SSA record at pp. 135, 150 & 156.

[52] *Id*. at p. 42.

[53] *Id*. at p. 238.

11

social security law.[54]

Viewing the record as a whole, substantial evidence supports the ALJ's decision. The ALJ made no legal error. For these reasons, the undersigned magistrate judge recommends denying Swilling's request for relief (docket entry # 2) and affirming the Commissioner's decision.

It is so ordered this 17th day of September, 2014.

                                              _____
                                              United States Magistrate Judge

---

[54] *See* 42 U.S.C. § 1382c(a)(3)(A) (specifying duration requirement for disability benefits). *See also* 20 C.F.R. § 404.1505(a) ("The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.").